## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

MONIQUE GAGNON,

    Plaintiff,

    v.

BOARD OF EDUCATION OF
MONTGOMERY COUNTY,

    Defendant.

Civil Action No. TDC-23-2359

### MEMORANDUM OPINION

Plaintiff Monique Gagnon has filed a civil action against Defendant the Board of Education of Montgomery County, Maryland ("the Board"), in which she asserts claims of disability discrimination and a hostile work environment, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C §§ 12111–12117; disability discrimination and retaliation, in violation of the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20–601 to 20–1203 (West 2021); and interference with the right to take medical leave, in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, 2611–2620. The Board has filed a Motion to Dismiss, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.

### BACKGROUND

Plaintiff Monique Gagnon was employed by the Board in the Montgomery County Public Schools ("MCPS") for over 16 years. In 2017, she began working at Montgomery Village Middle School ("MVMS" ) in Montgomery Village, Maryland as a Special Education Paraeducator.

Gagnon has been diagnosed with rheumatoid arthritis and asthma, which are chronic and progressive conditions that have caused her to suffer from "shortness of breath, chronic pain, and swelling." Third Am. Compl. ("TAC") ¶ 11, ECF No. 32. Based on her performance reviews, Gagnon asserts that she has "exceed[ed] her employer's reasonable job expectation" throughout her time as a paraeducator. *Id.* ¶ 15. Nevertheless, she alleges that during her time at MVMS, she experienced discrimination and harassment based on her disabilities, and retaliation for seeking reasonable accommodations of her disabilities, that resulted in her termination on January 19, 2022.

## I.     Alleged Discrimination and Harassment

Beginning in February 2021, Gagnon began to notify her supervisors of her health conditions and submitted multiple requests for accommodations that were ultimately denied. Specifically, on or about March 8, 2021, Gagnon requested that she be permitted to take more frequent breaks because of her asthma but was told that she could take such breaks only if additional staff was available. Gagnon's supervisors did not make such staff available to provide coverage during such breaks.

In the fall of 2021, Gagnon's arthritis and asthma began to worsen, to the point that she was "unable to walk at a fast pace" or to walk or stand for long periods of time. *Id.* ¶ 11. Accordingly, in August 2021, Gagnon requested a parking space closer to the school's entrance. Although such parking spaces were available, MVMS Principal Roy Liburd and Compliance Coordinator Khalid Walker declined the request and advised Gagnon to apply for a disability placard, which would require a more "complicated and drawn out" process. *Id.* ¶ 19. Gagnon also requested to work remotely or to be transferred to a vacant secretary position, roles that did not require running, lifting students, or prolonged standing, but these requests were also denied.

2

In the same time frame, Gagnon requested leave under the FMLA to address her medical conditions. After Liburd granted her first request, Gagnon took leave starting on September 11, 2021. On September 14, 2021, Gagnon submitted medical documentation to MVMS advising that Gagnon could not "stand continuously for more than 10 minutes at a time, run, or lift more than 15 pounds" until October 31, 2021. *Id.* ¶ 24. On October 16, 2021, Gagnon notified MVMS that she was undergoing a medical procedure on October 18, 2021 and requested medical leave from November 1, 2021 to November 15, 2021.

As Gagnon was making these requests for FMLA leave, Liburd "became increasingly hostile" toward Gagnon and began "pressuring her to resign." *Id.* ¶ 23. In the same time frame, Walker repeatedly canceled Zoom meetings that had been scheduled to discuss Gagnon's requests for accommodations. In one such meeting that did occur, Walker remarked to Gagnon that "some people just don't like to run." *Id.* ¶ 21. Although Gagnon continued to complain about the lack of reasonable accommodations up to and into January 2022, neither Liburd nor Walker provided Gagnon with any such accommodations. Rather, Liburd "continued to instruct her to perform tasks he knew she was unable or barely able to do," such as running after students. *Id.* ¶ 22. Notably, Gagnon asserts that students mocked her by imitating her gait by dragging their legs while walking, without any response or sanction by MVMS management.

## II.    Alleged Retaliation

On or about January 4, 2022, while Gagnon was out on "another approved medical leave," Liburd mailed to Gagnon a letter that instructed her to submit a Leave Request Form and a Certification of Physician by January 11, 2022. *Id.* ¶ 26. Gagnon asserts that she never received the letter and thus did not submit the requested documents. On January 19, 2022, MCPS sent a

certified letter to Gagnon stating that she was terminated for "abandonment of her position." *Id.* ¶ 27.

On January 20, 2022, before receiving the termination letter, Gagnon contacted MCPS to ask about a payroll issue, at which point Gagnon was informed for the first time of the January 4, 2022 request for forms relating to her medical leave. Gagnon then completed and returned the missing Leave Request Form that same day. On January 24, 2022, Gagnon received the termination letter, which included a copy of the January 4, 2022 letter that she had not previously received.

Although Gagnon was unable to obtain a completed Certification of Physician form from her physician until February 1, 2022, she promptly attempted to return the completed form by email that same day, but by then her email account had been locked. On February 2, 2022, Gagnon hand delivered that form to MCPS, as well as a letter requesting reconsideration of her termination, but her request was never granted.

### III.   Procedural History

On September 1, 2022, Gagnon filed a charge of discrimination ("the EEOC Charge") with the United States Equal Employment Opportunity Commission ("EEOC"). On June 2, 2023, the EEOC issued to Gagnon a Notice of Right to Sue. On August 29, 2023, Gagnon filed a self-represented Complaint in this Court in which she alleged violations of the ADA and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. ¶¶ 2000e to 2000e-17. Gagnon filed a First Amended Complaint on November 7, 2023. On May 24, 2024, Gagnon, through counsel, filed a Second Amended Complaint which removed the Title VII claims and added claims under the MFEPA and the FMLA. The presently operative Third Amended Complaint was filed on July 10, 2024 and did not alter the causes of action from the Second Amended Complaint. Specifically,

4

the Third Amended Complaint asserts the following causes actions in the following numbered counts: (1) disparate treatment, in violation of the ADA; (2) a failure to provide reasonable accommodations, in violation of the ADA; (3) a failure to engage in an interactive process, in violation of the ADA; (4) disability discrimination and interference with medical accommodations, in violation of the MFEPA; (5) retaliation, in violation of the MFEPA; (6) interference with rights to medical leave, in violation of the FMLA; and (7) a hostile work environment based on disability, in violation of the ADA.

## DISCUSSION

The Board has filed a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In the Motion, the Board argues that the Court should dismiss Gagnon's MFEPA claims as time-barred and that all claims should be dismissed because Gagnon has failed to allege sufficient facts to state plausible claims for relief.

### I.    Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II.  Statute of Limitations

The Board asserts that Gagnon's state law claims are time-barred by the MFEPA's two-year statute of limitations.  Under the MFEPA limitations provision, a plaintiff may advance a cause of action for employment discrimination or retaliation if three requirements are satisfied: (1) "the complainant initially filed a timely administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice"; (2) "at least 180 days have elapsed since the filing of the administrative charge or complaint"; and (3) "the civil action is filed within 2 years after the alleged unlawful employment practice occurred." Md. Code Ann., State Gov't § 20–1013(a)(1); *see McCray v. Md. Dep't of Transp.*, 662 F. App'x 221, 225 (4th Cir. 2016).  On May 29, 2022, Maryland amended the MFEPA to provide that the statute of limitations "shall be tolled while an administrative charge or complaint . . . is pending." Act of May 29, 2022, § 1, 2022 Md. Laws, ch. 660 (codified at Md. Code Ann., State Gov't § 20–1013(a)(2)).  The tolling provision became effective on October 1, 2022. *Id.* § 2.

Gagnon's MFEPA claims of disability discrimination and retaliation focus primarily on her termination that occurred in late January or early February 2022, when she was sent a termination letter and her request for reconsideration was not approved.  The Board therefore argues that the MFEPA claims, which were first asserted in the Second Amended Complaint filed on May 24, 2024, are time-barred because they were filed more than two years after her termination was finalized in February 2022 and thus were not "filed within 2 years after the alleged unlawful employment practice occurred." Md. Code Ann., State Gov't § 20–1013(a)(1)(iii).  Gagnon, however, argues that the MFEPA's tolling provision applies to toll the nine months, from September 1, 2022 to June 2, 2023, during which her EEOC Charge was pending before the EEOC. In turn, the Board argues that the tolling provision does not apply because it did not take effect

until October 1, 2022—after the alleged discrimination and retaliation occurred—and that the provision may not be applied retroactively.

Maryland courts adhere to four principles when considering whether a statute has retroactive effect:

(1) [S]tatutes are presumed to operate prospectively unless a contrary intent appears; (2) a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective; (3) a statute will be given retroactive effect if that is the legislative intent; but (4) even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws.

*Est. of Zimmerman v. Blatter*, 183 A.3d 223, 241 (Md. 2018) (quoting *Pautsch v. Md. Real Est. Comm'n*, 31 A.3d 489, 509 (Md. 2011)).

Although the Supreme Court of Maryland has not yet considered whether the 2022 MFEPA tolling amendment applies retroactively, the plain language of the amendment does not state a clear intention to override the presumption of a statute's prospective application. *See Hanke v. United Parcel Serv. Inc.*, No. 23-cv-02130-JRR, 2024 WL 3554973, at *5 (D. Md. July 26, 2024) ("There is no language in the statute based on which the court may infer that the Maryland General Assembly intended retroactive application of the amendment."); *Nance v. Clerk of Cir. Ct. for Balt. City*, No. 23-CV-01869-JMC, 2023 WL 8650346, at *10 (D. Md. Dec. 14, 2023) ("Looking at the plain language of the statute, there is no clear intention on the part of the General Assembly to have this provision operate retroactively."). There is, however, a plausible argument that this statute, which effectively extends the statute of limitations for MFEPA claims, could be deemed to govern "procedure or remedy," which would allow it to be applied to "cases pending in court when the statute becomes effective." *Est of Zimmerman*, 183 A.3d at 241; *cf. Doe v. Roe*, 20 A.3d 787, 797–800 (Md. 2011) (holding that generally, "a change to a limitations period—when applied to claims not-yet-barred by the previous limitations period—is procedural and remedial in nature

7

and thus finding that a law that extended the limitations period for civil claims stemming from alleged child sex abuse was procedural and remedial and was thus entitled to "no presumption of prospectivity").

The Court need not decide this issue or the broader question of whether the tolling provision may be applied retroactively because, in the present case, the tolling provision became effective on October 1, 2022, only eight months after the last conduct underlying the MFEPA claims. Moreover, the effective date occurred only one month after Gagnon filed the EEOC Charge on September 1, 2022 and thus before the vast majority of the nine-month time period during which the EEOC Charge was pending. The tolling provision, applied prospectively, therefore tolled the limitations period for the eight-month period from the effective date of October 1, 2022, at which time the EEOC Charge was pending, to June 2, 2023, when the Notice of Right to Sue was issued. Thus, by the time the MFEPA claims were first asserted in the Second Amended Complaint on May 24, 2024, the limitations period had run for only approximately 20 months from the allegedly discriminatory and retaliatory termination in January or February 2022, consisting of the eight months from that point in time to October 1, 2022 and the approximately 12 months from June 2, 2023 to May 24, 2024. The Court therefore rejects the argument that the MFEPA claims are untimely.

The Board's citation to *Hanke* and *Nance*, two unpublished decisions from this District, does not alter this conclusion. In both cases, the original two-year statute of limitations had already run prior to the October 1, 2022 effective date of the MFEPA amendment. *See Hanke*, 2024 WL 3554973, at *6 (noting that the two-year limitations period expired on April 1, 2021, two years after the plaintiff was discharged on April 1, 2019); *Nance*, 2023 WL 8650346, at *3 (finding that the statute of limitations expired on January 24, 2022, two years after the plaintiff was discharged

on January 24, 2020). Thus, unlike here, the application of the tolling provision prospectively to toll time following the effective date during which an EEOC charge remained pending would not render the claims in these cases timely. The Motion will be denied as to the statute of limitations argument.

## III. Disability Discrimination

The Board seeks dismissal for failure to state a claim of Gagnon's ADA disability discrimination claims asserted in Counts 1, 2, 3, and 7, consisting of claims for disparate treatment, a failure to provide a reasonable accommodation, a failure to engage in an interactive process, and a hostile work environment, respectively. It also seeks dismissal of the MFEPA disability discrimination claim asserted in Count 4. Consistent with prevailing legal authority, the Court will jointly evaluate Counts 2 and 4 under the standards applicable to claims under Title I of the ADA. *See Peninsula Reg'l Med. Ctr. v. Adkins*, 137 A.3d 211, 214, 220 (Md. 2016) (applying the ADA standard in evaluating a disability discrimination claim under the MFEPA); *see also Taylor v. Giant of Md., LLC*, 33 A.3d 445, 459 (Md. 2011) (stating that Maryland courts have a "history of consulting federal precedent in the equal employment area" when evaluating employment discrimination claims).

### A. Qualified Individual

At the outset, the Board argues that Gagnon's disability discrimination claims should be dismissed because she has failed to allege sufficient facts to show that she is a "qualified individual" as required to assert an ADA claim. Mot. Dismiss at 8, 13–14, 21, ECF No. 33-2. Generally, the ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and

privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8); *see Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995). The term "essential functions" refers to the "fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n) (2024).

According to the Board, Gagnon "has not stated any facts to support her assertion that she could perform the essential function of her Paraeducator job 'with or without a reasonable accommodation.'" Mot. Dismiss at 8. In the Third Amended Complaint, however, Gagnon asserted that, at all times throughout her employment, she performed "in a manner exceeding her employer's reasonable job expectation" as evidenced by her performance reviews in which she received at least the rating "meets all core competencies." TAC ¶ 15. Further, Gagnon asserted that she was qualified to perform the essential functions of the job up until September 14, 2021, and that after that point she could have continued to perform the essential functions of her position with such reasonable accommodations as more frequent breaks and a parking space closer to the school building. *Id.* ¶¶ 14, 21. Although the Board effectively argues that Gagnon's allegations on this issue are too general and conclusory, where Gagnon has referenced her performance evaluations and identified the specific accommodations that she needed to perform her job, the Court finds that, at this early stage, these allegations are sufficient to conclude that Gagnon has adequately pleaded that she was a qualified individual for the purposes of the ADA.

### B.    Disparate Treatment

In Count 1, Gagnon alleges a claim of disability discrimination in the form of disparate treatment. In particular, Gagnon asserts that MVMS officials refused to grant her requests for

10

reasonable accommodations and instead terminated her because of her disabilities. The Board argues that Gagnon has failed to state a claim of disparate treatment because Gagnon has not pleaded sufficient facts to establish that a similarly situated comparator without a disability was treated more favorably.

Generally, to plead a claim of disability discrimination, a plaintiff must allege facts demonstrating that (1) the plaintiff has a disability; (2) the plaintiff was a qualified individual for the position; and (3) the employer took an adverse employment action, such as discharging the plaintiff, because of the disability. *See Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015). Evidence "that other employees were similarly situated to the plaintiff (but for the protected characteristic) were treated more favorably" can constitute evidence that an employer's action was taken because of discrimination. *See Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 381 (4th Cir. 2022) (quoting *Laing v. Fed. Express Corp.*, 703 F.3d 713, 719 (4th Cir. 2013)). Gagnon proceeds under such a theory of disparate treatment by identifying as a comparator Patrice Krackle, a MVMS Special Education Paraeducator, who shared the same supervisor and job duties as Gagnon but did not have a disability. *See id.* (listing relevant considerations for a similarly situated inquiry, including whether the plaintiff and comparator "dealt with the same supervisor," were "subject to the same standards," and "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it" (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (per curiam))). Gagnon has alleged that Krackle requested to be transferred to a desk job as an accommodation unrelated to a disability. Gagnon further asserts that Krackle received more favorable treatment under similar circumstances because her request was granted, and she was not

11

terminated or forced to resign for requesting such an accommodation, while Gagnon's request for a desk job as an accommodation for her disability was denied and she was then terminated.

Viewed in the light most favorable to Gagnon, these allegations present sufficient comparator evidence to support Gagnon's claim that she was denied a reasonable accommodation and terminated because of her disability. *See id.* at 382–83 (concluding at the summary judgment stage that the plaintiff had a viable disparate treatment claim where she was terminated for avoiding customer phone calls while similarly situated colleagues without disabilities were provided with special coaching and were not terminated). Although the Board seeks to identify differences between the factual circumstances relating to Krackle and Gagnon, "a comparison between similar employees 'will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances.'" *Id.* at 381 (quoting *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)). Rather, certain differences are to "be expected," and where Gagnon has identified sufficient similarities, detailed factual comparisons to assess whether the circumstances are "sufficiently similar . . . generally should not be made" at the motion-to-dismiss stage. *Woods v. City of Greensboro*, 855 F.3d 639, 650–51 (4th Cir. 2017) (reversing the dismissal of a disparate treatment claim that had been based in part on a determination that the referenced comparators were not sufficiently similar).

Gagnon has therefore alleged sufficient facts to state a disability discrimination claim based on disparate treatment. The Motion will be denied as to Count 1.

###     C.     Failure to Accommodate

As to the claims asserted in Counts 2 and 4, the Board argues that Gagnon has failed to allege sufficient facts to support a claim that the Board improperly failed to provide her with reasonable accommodations of her disability by denying more frequent breaks, a closer parking

12

space, reassignment to a desk position, and telework. In order to establish a *prima facie* case of discrimination based on a failure to accommodate under the ADA and the MFEPA, a plaintiff must demonstrate that: (1) the plaintiff was an individual who had a disability within the meaning of the statute; (2) the employer had notice of the disability; (3) with a reasonable accommodation the plaintiff could perform the essential functions of the position sought; and (4) the employer refused to make such an accommodation. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013); *see Peninsula Reg'l Med. Ctr*, 137 A.3d at 223–24 (using decisions interpreting the ADA to construe the scope of MFEPA).

The Board argues that Counts 2 and 4 should be dismissed because each of Gagnon's requested accommodations were not reasonable. Under the ADA, "[r]easonable accommodations" are "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held is desired or customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(ii). As relevant here, reasonable accommodations under the ADA may include, but are not limited to, "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B); *Tartaro-McGowan v. Inova Home Health,* LLC, 91 F.4th 158, 166 (4th Cir. 2024). Significantly, the reasonableness of an accommodation is a fact-specific inquiry. *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994). To determine whether an accommodation is reasonable, a factfinder considers whether the proposed accommodation is "feasible or plausible." *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 414 (4th Cir. 2015).

13

At this early stage, the Court cannot conclude that Gagnon's proposed accommodations of more frequent breaks, reassignment to a vacant secretary position, and a reserved parking space close to the school building were necessarily unreasonable. Where the ADA lists "modified work schedules" as an example of a reasonable accommodation, more frequent breaks appear to be within the range of possible reasonable accommodations. 42 U.S.C. § 12111(9)(B). Moreover, MVMS's initial agreement that Gagnon could take more frequent breaks if staffing permitted suggests that, depending on the specific facts relating to such staffing during the relevant time period, it may have been a reasonable request. Similarly, reassignment to a vacant position is also specifically listed in the ADA as a recognized type of reasonable accommodation. *Id.*; *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 960 (4th Cir. 2021). Although such a reassignment is contemplated to be an accommodation of "last resort" to avoid disrupting "the settled expectations of other employees," *Elledge v. Lowe's Home Ctrs., LLC*, 979 F.3d 1004, 1014 (4th Cir. 2020), where Gagnon has alleged that a desk job position as a secretary was actually available at the time Gagnon requested a reassignment, it is premature to conclude that a transfer to that position could not be a reasonable accommodation. Finally, the EEOC's Interpretive Guidance on Title I of the ADA notes that the provision of a reserved parking space can be considered a reasonable accommodation. 29 C.F.R. pt. 1630, App. § 1630.2(o). Where Gagnon has alleged that her arthritis and asthma made prolonged walking difficult, that closer parking spaces were actually available at MVMS, and that applying for a governmental disability placard would not have been an immediate solution, the Court cannot presently conclude that this requested accommodation was unreasonable.

The Court finds, however, that Gagnon has not alleged sufficient facts to support a claim that her request that she be allowed to conduct her job via telework was reasonable. Where Gagnon

14

stated in the Third Amended Complaint that her position as a Special Education Paraeducator involved "running, lifting heavy students or prolonged standing," TAC ¶ 20, it is clear that the position consisted of an in-person role for which one of the essential functions was direct interaction with students in a classroom setting. She has not alleged facts that demonstrate that she could perform the essential functions of the job over the internet while working from home. Although Gagnon alleged that teachers were allowed to work remotely during the COVID-19 pandemic, an unprecedented period of time when school buildings were closed and all education was conducted over the internet, she did not allege that students were still learning from home as late as September 2021, at the time she made the request to work from home. Based on the present allegations, the Court finds that Gagnon has not stated a plausible claim for a failure to provide a reasonable accommodation in the form of telework. As for the reference to work in MCPS's Virtual Academy, an all-remote educational program, such a request amounted to request for a reassignment. Unlike for the secretary position, however, Gagnon has not alleged that there was a vacant position in the Virtual Academy for which she was qualified. Accordingly, the Court finds that Gagnon has not stated a plausible claim for a failure to provide a reasonable accommodation in relation to the Virtual Academy.

For these reasons, the Motion will be denied as to the claims in Counts 2 and 4 for a failure to provide a reasonable accommodation in the form of more frequent breaks, a closer parking space, and a transfer to a vacant secretary position but will be granted as to the claims based on the requests for telework or a position with the Virtual Academy.

### D.    Failure to Engage in an Interactive Process

In Count 3, Gagnon alleges that the Board violated the ADA by failing to engage in an interactive process to identify a reasonable accommodation. The Board argues this claim must be

15

dismissed because the failure to engage in the interactive process is not an independent cause of action.

Under ADA regulations, to identify and provide an appropriate reasonable accommodation, "it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3). Such a process "should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* The United States Court of Appeals for the Fourth Circuit, however, has held that although parties are required to engage in this interactive process, "the interactive process 'is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought.'" *Wilson*, 717 F.3d at 346–47 (quoting *Rehling v. City of Chicago*, 207 F.3d 1009, 1015 (7th Cir. 2000)); *see also Walter v. United Airlines, Inc.*, 232 F.3d 892, 2000 WL 1587489, at *4 (4th Cir. 2000) (unpublished) (per curiam) ("[A]n employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process."); *Dressel v. Safeway, Inc.*, No. ELH-19-1556, 2020 WL 5880860, at *7 (D. Md. Oct. 2, 2020).

Accordingly, the Fourth Circuit has analyzed the failure to engage in an interactive process not as a freestanding cause of action, but as relevant to the fourth element of a *prima facie* case of a claim of a failure to provide a reasonable accommodation, that the "the employer refused to make [a reasonable] accommodation." *See Wilson*, 717 F.3d at 346; *Haneke v. Mid-Atl. Cap. Mgmt.*, 131 F. App'x 399, 400 (4th Cir. 2005) (per curiam) (stating that the requirement that parties participate in an interactive process is "implicit" in the fourth element of a failure-to-accommodate claim and denying summary judgment because there were genuine issues of material fact on

16

whether the "parties met their respective burdens of engaging in the interactive process in good faith, and whether that caused a failure to accommodate"). A failure to engage in the interactive process therefore may result in liability only if that process could have identified a reasonable accommodation that would have enabled the plaintiff to perform the essential functions of the position. *See Wilson*, 717 F.3d at 346; *see also Jacobs*, 780 F.3d at 581; *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011) (discussing the interactive process as part of a reasonable accommodation claim and stating that "an employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process").

Even to the extent that a claim of a failure to engage in the interactive process could be a freestanding claim, Gagnon has not alleged that there was a reasonable accommodation other than those she already proposed to MVMS that could have been identified through the process and that would have allowed her to perform the essential functions of her job. Thus, any such claim is effectively redundant of her claim for a failure to provide the requested reasonable accommodations. Accordingly, the Motion will be granted as to Count 3. Gagnon may raise her arguments that the Board failed to engage in the interactive process as part of her failure to accommodate claims in Counts 2 and 4, which will proceed.

### E.    Hostile Work Environment

The Board also seeks dismissal of Gagnon's hostile work environment claim in Count 7. The elements of an ADA hostile work environment claim derive from the standards applicable to a Title VII hostile work environment claim. *See Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001). "A hostile [work] environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the

17

conditions of the victim's employment and create an abusive working environment.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  To establish a claim of a hostile work environment based on disability, a plaintiff must show that:  (1) the plaintiff was a qualified individual with a disability; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on the disability; (4) the harassment was "sufficiently severe or pervasive to alter a term, condition, or privilege of employment"; and (5) there was a factual basis to impute liability for the harassment to the plaintiff's employer.  *Fox*, F.3d at 177.

The Board primarily argues that Gagnon has failed to allege sufficient facts to establish the "severe or pervasive" element.  This element "has both subjective and objective components." *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175–76 (4th Cir. 2009).  As to the objective component, a court "must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* To clear the "high bar in order to satisfy the severe or pervasive test," a plaintiff "must show that the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive atmosphere." *Id.* at 176 (quoting *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007) (en banc)).

Here, Gagnon has alleged that the following actions comprised the harassment underlying her hostile work environment claim: (1) Walker's statement to her that "[s]ome people just don't like to run"; (2) her supervisor's "condoning" of students' actions of laughing at Gagnon and mimicking her gait by dragging their legs; (3) the denial of her requests for accommodations; and (4) Liburd's attempts to force Gagnon to resign.  TAC ¶ 94.

Walker's one-off comment, even if construed as questioning Gagnon's disability, is not sufficiently severe to support a hostile work environment claim. *See Cent. Wholesalers, Inc.*, 573 F.3d at 175–76. Although the students' actions qualify as harassment, they are attributable to the Board only to the extent that Gagnon made her supervisors aware of the conduct and they failed adequately to address it. *See id.* at 177. Where Gagnon has failed to provide allegations demonstrating the frequency of this conduct, whether and how she reported it to her supervisors, and what steps they failed to take to address it, she has not alleged sufficient facts to demonstrate that this conduct was severe or pervasive harassment attributable to the Board.

The remainder of Gagnon's allegations, relating to the denial of or failure to act on her requests for accommodations, largely describe personnel actions with which she disagreed, not harassment that inflicted the kind of humiliation, ridicule, or intimidation that generally characterizes severe or pervasive harassment. *See, e.g.*, *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 209 (4th Cir. 2019) (concluding that the plaintiff had not established severe or pervasive harassment based on the allegations that the employer denied his request for retroactive application of benefits, denied his promotion requests, disparately questioned African American employees regarding overtime, and disparately enforced workplace rules and practices against African American employees). Gagnon's vague assertions that Liburd "became increasingly hostile" when she requested accommodations and "pressur[ed] her to resign" are insufficiently specific to provide any basis to alter this conclusion. TAC ¶ 23.

Because Gagnon has not provided allegations that she was subjected to a workplace "permeated with discriminatory intimidation, ridicule, and insult" directed at her because of her disability, *see Boyer-Liberto*, 786 F.3d at 277, she has failed to allege the kind of severe or

19

pervasive harassment needed to establish a hostile work environment claim. The Court will grant the Motion as to Count 7.

## IV.    Retaliation

The Board also seeks dismissal of Gagnon's MFEPA retaliation claim, under which Gagnon asserts that her termination was in retaliation for her complaints about discrimination and harassment based on disability and her requests for reasonable accommodations. For MFEPA retaliation claims, courts may apply the burden-shifting framework employed in addressing Title VII and ADA retaliation claims. *See Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 & n.8 (Md. 2007) (recognizing that Maryland courts look to federal law in applying MFEPA); *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 391 (4th Cir. 2001) (applying the burden-shifting framework to an ADA retaliation claim). Under this framework, courts first consider whether the plaintiff has established a *prima facie* case of retaliation consisting of: (1) protected activity by the plaintiff; (2) a materially adverse action against the plaintiff; and (3) a causal link between the protected activity and the adverse action. *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). Upon such a showing, a defendant may present evidence of a legitimate non-retaliatory reason for the action. *Rhoads*, 257 F.3d at 392. At that point, the plaintiff has the burden to show that the proffered reason was pretextual and to establish that unlawful retaliation was the true reason for the action. *Id.* The Board argues that Gagnon has failed to allege sufficient facts to support the third prong of causation.

The Court disagrees and finds that Gagnon has adequately alleged causation. At the *prima facie* stage, this is "not an onerous burden." *Strothers v. City of Laurel*, 895 F.3d 317, 335–36 (4th Cir. 2018) (finding in a Title VII case that an employee may establish causation by showing that the employer knew of the employee's protected activity and took a materially adverse action soon

20

after). A causal connection can be deemed to be sufficient when the employer takes the materially adverse action "shortly after" learning of the protected activity. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Here, Gagnon alleges that, from September 2021 to January 2022, she "continuously complained" to Liburd about the lack of reasonable accommodations. TAC ¶ 22. The January 19, 2022 termination letter was thus sent within a few weeks of Gagnon's latest complaint to Liburd, which is sufficiently close in time to satisfy this element at the pleading stage. *See, e.g.*, *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (discussing cases finding that the causal connection element was sufficiently alleged based on materially adverse actions occurring four to six months after the protected activity); *King v. Rumsfeld,* 328 F.3d 145, 151 (4th Cir. 2003) ("[T]hat his termination came so close upon his filing of the complaint gives rise to a sufficient inference of causation to satisfy the prima facie requirement."). Even considering the protected activity to be the last specifically requested accommodation, Gagnon's submission on September 14, 2021 of a doctor's note recommending that Gagnon not be required to stand for long periods of time and not lift heavy objects, that request falls within the acceptable timeframe to infer causation at the pleading stage. *See Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 706 (4th Cir. 2001) (holding that that a request for a reasonable accommodation constitutes protected activity for purposes of a retaliation claim); *Carter*, 33 F.3d at 460. Gagnon has therefore alleged facts sufficient to state a retaliation claim. The Motion will be denied as to Count 5.

## V.    FMLA

Finally, the Board seeks dismissal of Gagnon's claim in Count 6 of interference with rights under the FMLA. As relevant here, the FMLA prohibits an employer from interfering with, restraining, or denying a covered employee's right to exercise or attempt to exercise the FMLA

right to "12 workweeks of leave during any 12-month period" for family- and health-related matters. 29 U.S.C. §§ 2612(a)(1), 2615(a)(1). "Employees who take qualifying FMLA leave also generally have the right 'to be restored by the employer to the position of employment held by the employee when the leave commenced.'" *Hannah P. v. Haines*, 80 F.4th 236, 243–44 (4th Cir. 2023). To establish a claim of interference under the FMLA, a plaintiff must demonstrate that: (1) the plaintiff was entitled to an FMLA benefit; (2) the employer interfered with the provision of that benefit; and (3) the interference caused the plaintiff harm. *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2014) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)).

Gagnon's FMLA interference claim is based on the allegation that she was effectively terminated for taking approved FMLA leave in January 2022. The Board argues for dismissal of the claim on the grounds that Gagnon has not alleged facts to show that she was entitled to the FMLA leave beyond November 15, 2021, she did not provide adequate notice of her intention to take leave after that date, and she did not submit appropriate documentation as evidenced by the fact that MCPS requested that she submit the required forms and then terminated her when she failed to do so.

Gagnon, however, has alleged that as of January 2022 she was on "approved medical leave." TAC ¶ 26. Notably, employees are not required to assert their FMLA rights specifically; rather, upon a request for leave, "the responsibility falls on the employer to inquire further about whether the employee is seeking FMLA leave." *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 295 (4th Cir. 2009) (citing 29 C.F.R. § 825.302(c) (2008)). Although the facts that MCPS sent a letter to Gagnon directing her to submit required forms and that she initially failed to do so suggest that there may have been a justification for denying her leave and terminating her for abandoning her job, *see* 29

22

C.F.R. § 825.302(c) ("Failure to respond to reasonable employer inquiries regarding a leave request may result in denial of FMLA protection . . . ."), Gagnon has further alleged that she did not receive the letter, that when she later learned of the request she promptly acted to submit the required forms, and that she unsuccessfully requested reconsideration of her termination. These allegations raise factual questions on whether Gagnon had a legitimate reason for failing to submit the forms, whether she, in fact, could establish that she was entitled to leave, and whether MCPS nevertheless sustained her termination. Viewing these allegations in the light most favorable to Gagnon, as is required at this stage, the Court finds that that they are sufficient to support a claim of interference with FMLA rights arising from MCPS's denial of Gagnon's request for reconsideration of her termination even after she had established that she was entitled to the leave. *See Yashenko v. Harrah's N.C. Casino Co.*, 446 F.3d 541, 547 (4th Cir. 2006) (stating that the FMLA provides a limited right to restoration to a prior employment position after taking qualifying leave). The Motion will therefore be denied as to Count 6.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss, ECF No. 33, will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to Counts 3 and 7, which will be dismissed, and will be otherwise denied. A separate Order shall issue.

Date: December 23, 2024

THEODORE D. CHUANG
United States District Judge