## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

MONIQUE GAGNON,

    Plaintiff,

    v.

BOARD OF EDUCATION OF
MONTGOMERY COUNTY,

    Defendant.

Civil Action No. 23-2359-TDC

### MEMORANDUM OPINION

Plaintiff Monique Gagnon has filed a civil action against Defendant the Board of Education of Montgomery County, Maryland ("the Board") in which she alleges claims of disability discrimination, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111–12117; disability discrimination and retaliation, in violation of the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20–601 to 20–1203 (LexisNexis 2021); and interference with the right to take medical leave, in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, 2611–2620. The Board has filed a Motion for Summary Judgment, which is fully briefed. ECF No. 66. For the reasons set forth below, the Motion will be GRANTED.

### BACKGROUND

#### I.    Employment History

Prior to January 2022, Plaintiff Monique Gagnon worked for the Montgomery County Public Schools ("MCPS"), which are operated by the Board, as a temporary substitute teacher, recess and lunch aide, and most recently, a Special Education Paraeducator. In 2017, Gagnon

began working as a Special Education Paraeducator at Montgomery Village Middle School ("MVMS") in Montgomery Village, Maryland. The Special Education Paraeducator job description included the following physical requirements associated with the role of assisting special education students:

> PHYSICAL DEMANDS: (Special requirements such as lifting heavy objects and frequent climbing.) Frequent bending, walking, running, and lifting of objects/equipment up to 50 pounds may be required. Additional demands may require moving wheelchairs, assisting with toileting, feeding and other daily living activities. Assist with self-care plans such as toileting, feeding, personal hygiene, dressing and other daily living activities; physically assist students to engage in activities such as walking or eating, able to kneel and work on the floor with students, able to walk for long periods. Assistance with physically aggressive behaviors required.

Joint Statement of Undisputed Facts ("JSUF") at 1, ECF No. 66-2. As of 2021, Gagnon was one of four Special Education Paraeducators assigned to the MVMS Learning for Independence Program. That program serves students who have significant cognitive impairments and require significant support with academics, behavior, and daily living activities. For at least part of the time that Gagnon worked at MVMS, her colleague, Patrice Krackle, served as a paraeducator in MVMS's separate Learning and Academic Disabilities Program. Gagnon has asserted in a declaration that her "job duties and position description were similar" to those of Krackle even though they worked with different students. Joint Record ("J.R.") 110, ECF Nos. 74 to 74-15. However, Dawn Fersch-Burns, the head of the special education department at MVMS during the relevant time period, testified during her deposition that the two employees "worked with totally different students," so "the expectations of [their] roles are different" based on the different "service model that they worked within." J.R. 70.

In February 2021, around the time that MCPS began phasing out COVID-19 remote learning, Gagnon notified MCPS that she had asthma and, in light of that condition, requested an

accommodation to limit her exposure to COVID-19. She then requested and received medical leave from March 15, 2021 to June 16, 2021. During that period of leave, on April 2, 2021, MCPS issued an ADA Accommodations Memorandum to Gagnon that approved certain accommodations through the first phase of in-person instruction, which included permitting Gagnon to "telework on Virtual Check-In Days" but required her to "report onsite on Instructional Days." JSUF at 2. In addition, MVMS agreed to "limit the amount of students in [her] classroom," permit her "to take breaks when appropriate staffing is available," provide students with desk barriers, and provide Gagnon with a face shield. *Id.* In her February 2, 2026 declaration, Gagnon stated that "[n]one of the April 2, 2021 Memorandum accommodations were in fact given." J.R. 109. However, during Gagnon's earlier August 27, 2025 deposition, she stated that she "can't testify that those [accommodations] were actually given . . . [b]ecause I ended up taking leave." J.R. 15. Indeed, as Gagnon acknowledged, she did not return to work at MVMS for the remainder of the 2020–21 school year.

In the summer of 2021, Gagnon was diagnosed with rheumatoid arthritis. In August 2021, Gagnon notified Fersch-Burns and MVMS Principal Roy Liburd of this diagnosis. After receiving this news, Fersch-Burns sent to Gagnon a text message that asked, "Will you be extending leave or is it something else, like retiring?" J.R. 123. Gagnon replied, "I'm not sure yet. I will let you know." *Id.* A day later, when Fersch-Burns asked if she should "ask the new admin secretary to put your job in the system," Gagnon replied, "Not yet. I will let you know." *Id.*

On or about September 7, 2021, Gagnon submitted an ADA accommodation request based on her rheumatoid arthritis in which she requested to telework and to limit her physical exertion. On September 15, 2021, Gagnon met with Fersch-Burns, Liburd, and MCPS Compliance Coordinator Khalid Walker regarding this ADA accommodation request. On September 17, 2021,

MCPS issued an ADA Accommodation Memorandum that approved certain accommodations through December 31, 2021, including sitting down during student lunches for up to three minutes unless impracticable, not assigning her to supervise students during physical education unless impracticable, providing a designated parking space, and providing a two-way radio. On September 19, 2021, however, Gagnon submitted a request for long-term medical leave from September 20, 2021 through October 29, 2021, which included documentation from her medical provider that she was unable to perform work of any kind. This leave request was approved and took effect on September 20, 2021. In light of a medical procedure scheduled for October 28, 2021, Gagnon submitted a request to extend her long-term medical leave from November 1, 2021 to November 15, 2021. This leave request was also approved.

Gagnon did not return to work on or about November 15, 2021 and did not submit an additional leave request at that time. Gagnon has testified that she did not return to her position at any time after September 15, 2021 because of "the physical demands of the job, and my rheumatoid arthritis," and because she "was looking for [a] secretarial position" during that time period. J.R. 23.

Gagnon did not communicate with Liburd at any point after she began her long-term medical leave on September 20, 2021. On December 15, 2021, MVMS Administrative Secretary Joanna Miller sent an email to Gagnon's MCPS email address stating that Gagnon's long-term leave had expired on November 15, 2021, that MVMS staff had been unable to communicate with her via email or text, that Gagnon was "out of sick leave and currently [had] 28 hours of personal leave remaining," and that Gagnon had "been overpaid on leave." J.R. 100–101. On January 5, 2022, Liburd sent an email to Gagnon's MCPS email address with leave forms and a letter notifying her of her lack of compliance with MCPS leave guidelines and that the failure to

complete and return those forms by January 11, 2022 may result in an adverse employment action. On January 19, 2022, having received no communications from Gagnon, the Board terminated Gagnon's employment on the grounds of abandonment of the position. According to Liburd, when an MCPS employee is on leave, "you are required to communicate with the school, or you risk being terminated for abandonment of duties," J.R. 188, and "after a certain number of days . . . if a staff member is not reporting or updating their leave . . . they have abandoned their position." J.R. 145.

After September 20, 2021, Gagnon had no communications with any MVMS staff until January 2022, when she did not receive a paycheck for the first time. On February 2, 2022, after she received the termination letter, Gagnon returned to MCPS completed forms that requested approval to extend her medical leave to cover the time period from November 16, 2021 through February 28, 2022.

## II.    Procedural History

The procedural history of this case prior to the filing of the Board's Motion to Dismiss is set forth in this Court's memorandum opinion in *Gagnon v. Board of Education of Montgomery County*, 760 F. Supp. 3d 359 (D. Md. 2024), which the Court incorporates by reference. *Id.* at 366–67. The operative Third Amended Complaint alleges the following causes of action in the following numbered counts: (1) disability discrimination based on disparate treatment, in violation of the ADA; (2) disability discrimination based on a failure to provide reasonable accommodations, in violation of the ADA; (3) disability discrimination based on a failure to engage in an interactive process, in violation of the ADA; (4) disability discrimination and interference with medical accommodations, in violation of the MFEPA; (5) retaliation, in violation of the MFEPA; (6) interference with the right to take medical leave, in violation of the FMLA;

and (7) a hostile work environment based on disability, in violation of the ADA. In resolving the Motion to Dismiss, the Court dismissed Gagnon's ADA claims in Count 3 for the failure to engage in an interactive process and in Count 7 for a hostile work environment. *Id.* at 377. The Court granted the Motion as to the claims in Counts 2 and 4 for a failure to provide reasonable accommodations under the ADA and MFEPA, respectively, to the extent that they were based on Gagnon's requests to be allowed to telework or to be provided a position with the MCPS Virtual Academy. *Id.* at 373. The Court denied the Motion as to the claims in Counts 2 and 4 based on a failure to provide reasonable accommodations in the form of more frequent breaks, a closer parking space, and a transfer to a vacant secretary position. *Id.*

## DISCUSSION

In the Motion for Summary Judgment, the Board seeks summary judgment on the remaining claims on the grounds that Gagnon has failed to provide sufficient evidence to support claims of a failure to provide reasonable accommodations, disparate treatment, FMLA interference, and retaliation.

## I.    Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit

under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II.    Failure to Provide Reasonable Accommodations

In Counts 2 and 4, Gagnon asserts claims of disability discrimination based on a failure to provide reasonable accommodations of her disability, in violation of the ADA and the MFEPA. Consistent with prevailing legal authority, the Court will jointly evaluate the analogous ADA and MFEPA discrimination claims under the standards applicable to claims under the ADA. *See Peninsula Reg'l Med. Ctr.*, 137 A.3d at 214, 220, 223–24 (Md. 2016) (applying the ADA standard and applicable case law in evaluating a disability discrimination claim under the MFEPA); *see also Taylor v. Giant of Md., LLC*, 33 A.3d 445, 459 (Md. 2011) (stating that Maryland courts have a "history of consulting federal precedent in the equal employment area" when evaluating employment discrimination claims).

To establish a claim for a failure to provide reasonable accommodations, a plaintiff must demonstrate that: (1) the plaintiff was an individual who had a disability within the meaning of the statute; (2) the employer had notice of the disability; (3) with a reasonable accommodation the plaintiff could perform the essential functions of the position sought; and (4) the employer refused to make such an accommodation. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). Plaintiffs bear the burden of demonstrating that they could perform the essential functions of the job with reasonable accommodations. *Tyndall v. Nat'l Educ. Ctrs, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994).

Under the ADA, "[r]easonable accommodations" include "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired

is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(ii).  As relevant here, reasonable accommodations under the ADA may include, but are not limited to, "[j]ob restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B); *see Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 166 (4th Cir. 2024).

In ruling on the Board's Motion to Dismiss, the Court dismissed any claims in Counts 2 and 4 based on Gagnon's requests to telework and to be transferred to a Virtual Academy position and limited Counts 2 and 4 going forward to claims based on the failure to provide a reasonable accommodation in the form of a transfer to a vacant secretary position, more frequent breaks, and a closer parking space. *Gagnon*, 760 F. Supp. 3d at 373.

As to these remaining issues, the Court concludes that the record does not support the conclusion that a transfer to a secretary position was a reasonable accommodation.  "The ADA only requires 'reassignment to a *vacant* position' as an accommodation for an employee with a disability." *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 960 (4th Cir. 2021) (quoting 42 U.S.C. § 12111(9)(B) (emphasis added)).  The ADA "does not require that an employer create a new position for a disabled employee." *Id.* (quoting *Laird v. Fairfax Cnty.*, 978 F.3d 887, 892 n.3 (4th Cir. 2020)).  Here, there is no evidence that a vacant secretary position existed in September 2021, at the time when Gagnon allegedly requested this accommodation.  Indeed, in her deposition, Gagnon testified only that a secretary position became available at MVMS "prior to [the] 2021 school year," and that she did not "have the specific dates I inquired about that position." J.R. 24. When questioned further, Gagnon stated that the position was available "prior to the 2021–2022

school year," that there were no available secretary positions at MVMS during the 2021–2022 school year, and that she did not recall if there were any available secretary positions at any other MCPS school during the 2021–22 school year. J.R. 24. Moreover, there is no evidence that Gagnon submitted an application for a secretary position during this time frame. Where the record does not show that there was a vacant and available secretary position, the reasonable accommodation claim based on a failure to transfer Gagnon to a secretary position necessarily fails. *See Perdue*, 999 F.3d at 960.

As for Gagnon's claims that she was denied reasonable accommodations in the form of more frequent breaks and a closer parking space, the record shows that in the April 2, 2021 ADA Accommodation Memorandum, MCPS offered to allow Gagnon to take breaks when appropriate staffing was available, and in the September 17, 2021 ADA Accommodation Memorandum, MCPS offered Gagnon additional breaks, which would allow her to sit down during parts of the student lunch period and relieve her of the need to supervise students during physical education, as well as a designated parking space. Although Gagnon argues that these accommodations were not actually provided, and that there is no evidence that MCPS had enough staff to permit her to actually take breaks during lunch, the record demonstrates that before these accommodations could be implemented, Gagnon took long-term medical leave beginning on March 15, 2021, and then again on September 17, 2021, in relation to which she provided documentation from a medical provider that she could not perform work of any kind. Thus, Gagnon never went to the school to determine if she would be provided with additional breaks or would receive the proposed parking space, and neither the memorandum nor any other evidence shows that these accommodations would not have been provided. The Court therefore finds that Gagnon has not provided sufficient

9

evidence to show that MCPS failed to provide reasonable accommodations in relation to her requests for more frequent breaks or a closer parking space.

Further, in light of the medical documentation that Gagnon could not perform work of any kind as of September 2021, and Gagnon's own deposition testimony that she sought additional leave beyond November 2021 because of her rheumatoid arthritis, Gagnon has not provided sufficient evidence to show that she could perform the essential functions of her position, which included certain physically demanding duties arising from necessary interactions with special education students, even with the requested accommodations. *See Wilson*, 717 F.3d at 346 (concluding that where a plaintiff "did not provide any medical or other evidence" that on the last date of his approved leave "he was cleared and able to perform the[] tasks" in his job description with a reasonable accommodation, he had not shown that he could perform the essential functions of his position). Where Gagnon has similarly provided neither evidence showing that she could perform the essential functions of her position nor evidence showing that MCPS refused to make reasonable accommodations, the Motion will be granted as to the claims in Counts 2 and 4 alleging a failure to provide reasonable accommodations.

## III.   Disparate Treatment

The Board argues that it is entitled to summary judgment on Gagnon's claims in Counts 1 and 4 for disability discrimination based on disparate treatment under the ADA and the MFEPA arising from the alleged discriminatory treatment of Gagnon, as compared to the treatment of other employees without disabilities, in relation to requested accommodations.

Disability discrimination may be proven through direct and indirect evidence or through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015). Under the

*McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of a disparate treatment claim under the ADA, which requires a showing that the plaintiff (1) has a disability; (2) was subjected to an adverse employment action; (3) was performing the essential functions of the position "at a level that met [the] employer's legitimate expectations"; and (4) "the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Abilt v. Cent. Intel. Agency*, 848 F.3d 305, 315 n.9 (4th Cir. 2017). "If the employee makes this showing, 'the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 379 (4th Cir. 2022) (quoting *Lettieri v. Equant*, 478 F.3d 640, 646 (4th Cir. 2007)). "If the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation was 'actually a pretext for discrimination.'" *Id.* (quoting *Lettieri v. Equant*, 478 F.3d 640, 646 (4th Cir. 2007)). At that point, the plaintiff's burden to demonstrate pretext has merged with the ultimate burden to prove that the plaintiff has been the victim of intentional discrimination. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). Accordingly, to satisfy the pretext requirement, a plaintiff must show "both that the reason was false, and that discrimination was the real reason." *Adams v. Trustees of the Univ. of N.C.–Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)).

Here, Gagnon's disparate treatment claim rests on her allegation that MCPS treated Gagnon less favorably than other employees on the basis of her disability because it refused to grant her requests for accommodations and eventually terminated her, while it granted similar accommodations to other employees who lacked a disability. Evidence "that other employees who were similarly situated to the plaintiff (but for the protected characteristic) were treated more favorably" can constitute evidence that an employer's action was taken because of discrimination.

11

*See Cowgill*, 41 F.4th at 381 (quoting *Laing v. Fed. Express Corp.*, 703 F.3d 713, 719 (4th Cir. 2013)). In considering whether two employees are similarly situated, courts consider whether the plaintiff and a proposed comparator (1) "held the same job description"; (2) "were subject to the same standards"; (3) "were subordinate to the same supervisor"; and (4) "had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019) (addressing analogous claims under Title VII of the Civil Rights Act of 1964). Relevant considerations also include whether the employees "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Cowgill*, 41 F.4th at 381 (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)).

Gagnon's disparate treatment claim primarily relies on her assertion that Patricia Krackle, another MVMS Special Education Paraeducator, was a similarly situated comparator who lacked a disability but requested and received a transfer to a desk job. However, the only evidence about Krackle submitted by Gagnon is her post-deposition declaration generally stating that "our job duties and position description were similar," and that Krackle requested and received a desk job. J.R. 110. Gagnon has failed to present any specific evidence demonstrating that she and Krackle were actually similarly situated. Even assuming that Gagnon and Krackle shared the same supervisor, the only additional evidence relevant to whether Krackle was similarly situated is that she worked as a Special Education Paraeducator in the Learning and Academic Disabilities Program at MVMS, while Gagnon worked in the Learning for Independence Program, and that Fersch-Burns testified that Gagnon and Krackle "worked with totally different students," so "the expectations of [their] roles are different" based on the different "service model that they worked

within," all of which weighs against a finding that they were similarly situated.   J.R. 70.   The record does not include Krackle's position description or any specific description of her job duties, and it contains no evidence on whether Gagnon and Krackle had comparable experience, education, and circumstances surrounding the alleged requests for a transfer to a desk job.  Indeed, it includes no specific evidence about when Krackle made any request for a desk job, whether any desk job was then vacant, or the reasons the request was made or granted.  Rather, Liburd testified in his deposition that he believed that Krackle was dismissed from her position as a paraeducator.

In light of the dearth of specific factual evidence presented about Krackle and her alleged request for a desk job, Gagnon's general statement in her declaration that Krackle had similar duties and positions amounts to a "self-serving opinion that cannot, absent objective corroboration, defeat summary judgment." *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004); *see Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (affirming the district court's decision to disregard a plaintiff's self-serving opinions contained in her "unsupported assertions of her qualifications and the abilities of her colleagues").  The Court therefore finds that Gagnon has not presented sufficient evidence to support a disparate treatment claim based on more favorable treatment of Krackle.

To the extent that Gagnon generally claims that "other paraeducators and teachers were allowed to work remotely during the Pandemic," Opp'n at 11–12, ECF No. 72, she similarly provides no evidence about any specific, similarly situated employee outside of her protected class who was actually treated differently under similar circumstances.  Further, at the time that Gagnon requested to work remotely in or about September 2021, MCPS had already returned to in-person learning.  Without any evidence about the specific comparator employees, their specific positions and duties, and the timing of their requests to work remotely as compared to the operational status

of MCPS, Gagnon's vague reference to other comparators does not support an inference of discrimination.

Finally, beyond the argument that she was treated differently from similarly situated comparators, Gagnon has not presented any evidence, direct or circumstantial, that suggests an intent to discriminate against individuals with disabilities. A review of the sequence of events surrounding Gagnon's requests for accommodations, the Board's approval of certain accommodations, Gagnon's emails and meetings with school officials regarding the accommodations, and Gagnon's pre-termination requests for long-term medical leave, all of which were granted, do not provide any basis to support a finding of discriminatory intent. *See Tartaro-McGowan*, 91 F.4th at 173 (finding no inference of unlawful discrimination where the defendants offered accommodations and "signaled a willingness to negotiate with her regarding her" remaining requests). "Although courts must carefully consider summary judgment when intent is an issue, '[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.'" *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (citations omitted). Where Gagnon has failed to present sufficient evidence to support an inference that the failure to grant her requested accommodations and to terminate her was motivated by an intent to discriminate based on disability, the Court will grant the Motion for Summary Judgment as to Counts 1 and 4. The Court therefore need not address the Board's remaining arguments relating to Gagnon's disability discrimination claims.

## IV.    FMLA Interference

The Board also seeks summary judgment on Gagnon's claim in Count 6 for FMLA interference. To establish a claim of interference under the FMLA, a plaintiff must demonstrate

that: (1) the plaintiff was entitled to an FMLA benefit; (2) the employer interfered with the provision of that benefit; and (3) the interference caused harm. *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)).

"To qualify for FMLA leave, an employee must notify their employer of their need for leave." *Roberts v. Gestamp West Virginia, LLC*, 45 F.4th 726, 733 (4th Cir. 2022). Under the FMLA regulations, an employee must "state a qualifying reason for the needed leave and otherwise satisfy the notice requirements set forth in [29 C.F.R.] § 825.302 or § 825.303 depending on whether the need for leave is foreseeable or unforeseeable." 29 C.F.R. § 825.301(b) ("Employee responsibilities").

When leave is foreseeable, an employee must generally "provide the employer at least 30 days advance notice before FMLA leave is to begin," or "[i]f 30 days notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable." 29 C.F.R. § 825.302(a). Notice for foreseeable leave must consist of "at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c).

When leave is unforeseeable, "[a]n employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Notice for unforeseeable leave must include "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). Moreover, "[w]hen the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual

circumstances." 29 C.F.R. § 825.303(c). "If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." *Id.*

Here, MCPS granted all of Gagnon's requests for medical leave for time periods up to November 15, 2021, including by approving leave from September 20, 2021 to October 29, 2021 and subsequently approving leave from November 1, 2021 to November 15, 2021. As for the time period after that date until her termination on January 19, 2021, Gagnon has not provided sufficient evidence to show that she provided any notice to the Board that she needed and was qualified for FMLA leave. As Gagnon acknowledged, she did not submit her request to extend her leave until January 20, 2022, after her termination and two months after her prior period of medical leave had expired. Rather, she has testified that during that time period, she "was looking for the secretarial position" that she sought. J.R. 23.

Where Gagnon had already been diagnosed with rheumatoid arthritis in the summer of 2021 and received medical leave based on that condition through November 15, 2021, her need for leave was arguably foreseeable such that she was required to provide notice 30 days in advance or as soon as practicable. *See* 29 C.F.R. § 825.302(a). Even if the need for extended leave was unforeseeable, she has not provided any evidence showing that she complied with the usual and customary requirements for requesting leave from the Board—procedures which she had previously followed in requesting and receiving medical leave on at least two prior occasions. Indeed, Liburd's January 4, 2022 letter states that Gagnon was "not in compliance with Montgomery County Public Schools (MCPS) leave guidelines and procedures." J.R. 103. Finally, although Gagnon contends that her failure to request an extension of her medical leave was the result of MCPS's failure to notify her of the need to take action, the FMLA imposes the

16

responsibility of providing notice of the need for medical leave on the employee, not the employer. *See* 29 C.F.R. §§ 825.301(b), 825.802(a), 825.303(a). Thus, as Gagnon's own testimony shows, she did not satisfy the requirement that she timely notify the Board of her need for medical leave for the time period after November 15, 2021 and therefore was not entitled to FMLA leave during that period. Accordingly, the Court will grant the Motion as to the FMLA interference claim in Count 6.

## V.    Retaliation

The Board also seeks summary judgment on Gagnon's claim in Count 5 of retaliation in violation of the MFEPA. For MFEPA retaliation claims, courts may apply the burden-shifting framework employed in addressing Title VII and ADA retaliation claims. *See Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 & n.8 (Md. 2007) (recognizing that Maryland courts look to federal law in applying MFEPA); *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 391 (4th Cir. 2001) (applying the burden-shifting framework to an ADA retaliation claim). Under this framework, courts first consider whether the plaintiff has established a *prima facie* case of retaliation consisting of: (1) protected activity by the plaintiff; (2) a materially adverse action against the plaintiff; and (3) a causal link between the protected activity and the adverse action. *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). Upon such a showing, a defendant may present evidence of a legitimate non-retaliatory reason for the action. *Rhoads*, 257 F.3d at 392. At that point, the plaintiff has the burden to show that the proffered reason was pretextual and to establish that unlawful retaliation was the true reason for the action. *Id.*

A request for a reasonable accommodation can constitute protected activity for purposes of a retaliation claim. *See Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 706 (4th Cir. 2001). Likewise, a termination qualifies as a materially adverse action. *King v. Rumsfeld*, 328 F.3d 145,

151 (4th Cir. 2003). Regardless of whether Gagnon has presented sufficient evidence of causation for purposes of a *prima facie* case of retaliation, Gagnon's claim fails because she has not effectively rebutted the Board's legitimate, non-retaliatory reason for terminating her employment. *See Haulbrook*, 252 F.3d at 706 (finding that a "question of fact is not material" where "the proffered legitimate reason for [the plaintiff's] termination . . . was not rebutted effectively").

The Board has presented evidence that it terminated Gagnon's employment for a legitimate, non-retaliatory reason, specifically abandonment of her position. It is undisputed that after Gagnon's long-term medical leave expired on November 15, 2021, she neither returned to work nor requested an extension of her leave until after her termination. Liburd testified that when an MCPS employee is on leave, "you are required to communicate with the school, or you risk being terminated for abandonment of duties," J.R. 188, and that "after a certain number of days . . . if a staff member is not reporting or updating their leave . . . they have abandoned their position." J.R. 145. Gagnon's termination letter of January 19, 2022 states that she was dismissed "for abandonment of position" because the Board had not "received the required leave forms" for Gagnon to remain on leave. J.R. 105. That letter noted that MCPS had warned Gagnon, including in a January 4, 2022 letter from the school principal, that if she did not submit the required leave request forms in their entirety by January 11, 2022, she could face an adverse employment action.

Gagnon argues that job abandonment was a pretextual reason for her termination because she never received notice that her leave had expired and thus did not abandon her position. She does not dispute that after November 15, 2021, MCPS officials sent her messages about the expiration of her long-term leave but asserts that she did not receive them, in part because while she was on leave she did not have access to her work email, to which the messages were sent. Any dispute over whether Gagnon actually received these notices is not material. As an employee

seeking medical leave, Gagnon had the burden to make timely requests for leave, including extensions of leave. 29 C.F.R. § 825.302(d); *id.* § 825.303(c) (If "an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA–protected leave may be delayed or denied."). Where Gagnon submitted and received approval of three advanced requests for leave with specified start and end dates in 2021, the last of which expired on November 15, 2021, she demonstrated full knowledge of MCPS's usual requirement to seek such leave in advance. Gagnon has not identified any evidence that she requested leave for the period following November 15, 2021, expressed any intent to return to work, or even communicated with her school's principal in any way after that date, until after she was terminated on January 19, 2021. Thus, Gagnon has not provided evidence sufficient to support the conclusion that the identified reason for her termination was a pretext for retaliation.

Finally, the Court finds the record devoid of evidence that MCPS acted with retaliatory intent. Rather, the record shows that MCPS repeatedly sought clarification on whether and when Gagnon would be ready to return to work. In September 2021, when Gagnon reported that she may need medical leave because of her rheumatoid arthritis, Fersch-Burns asked, "Will you be extending leave or is it something else, like retiring," and Gagnon replied, "I'm not sure yet. I will let you know." J.R. 123. A day later, when Fersch-Burns asked if she should "ask the new admin secretary to put your job in the system," Gagnon similarly responded, "Not yet. I will let you know." *Id.* Then, after Gagnon sought and received an extension of her medical leave through November 15, 2021, MCPS reached out to her on at least two occasions, including on December 15, 2021, when an MVMS administrative secretary sent her an email informing her that her long-term leave had expired, J.R. 100–101, and on January 5, 2022, when Liburd sent her an email with

19

leave forms and a letter dated January 4, 2022 informing her that she needed to complete and return those forms by January 11, 2022, J.R. 102–103. Even accepting Gagnon's claim that she never received these messages because she did not have access to that email address, these messages demonstrate that MCPS was seeking to give Gagnon the opportunity to request continued leave before taking any adverse action against her and refute Gagnon's claim that there was retaliatory intent.

Accordingly, because Gagnon has not provided evidence that MCPS's stated reason for her termination was pretextual or that MCPS acted with retaliatory intent, the Motion will be granted as to the MFEPA retaliation claim in Count 5.

## CONCLUSION

For the foregoing reasons, the Board's Motion for Summary Judgment will be GRANTED, and judgment will be entered in favor of the Board. A separate Order shall issue.

Date:  June 3, 2026

THEODORE D. CHUANG
United States District Judge